UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOANNA SENAY,                    :
      Plaintiff,               :
                      :
     v.                         :     CA 06-548 S
                      :
MICHAEL J. ASTRUE,[1]            :
Commissioner,                    :
Social Security Administration,  :
      Defendant.               :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Supplemental Security Income ("SSI"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Joanna Senay ("Plaintiff") has filed a motion to reverse the Commissioner's decision or, alternatively, to remand the matter to the Commissioner. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

The matter has been referred to this Magistrate Judge for preliminary review, findings, and recommended disposition

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Commissioner Michael J. Astrue has been substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name ...."); see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

pursuant to 28 U.S.C. § 636(b)(1)(B).  On September 26, 2008, this Magistrate Judge issued a Report and Recommendation (Document ("Doc.") #10) ("Report and Recommendation of 9/26/08"), recommending that the matter be remanded to the Commissioner for further proceedings in compliance with the regulations pertaining to evaluation of mental impairments.  See Report and Recommendation of 9/26/08 at 16-17.  However, U.S. District Judge William E. Smith declined to adopt the Report and Recommendation of 9/26/08 and "refer[red] this case back to the Magistrate Judge for review consistent with this decision and if necessary further recommendations as to disposition with respect to the Plaintiff's remaining arguments."[2]  Memorandum and Decision dated October 14, 2008 (Doc. #14) ("Memorandum and Decision of 10/14/08") at 4.

    For the reasons stated herein, I find that the Commissioner's decision that Plaintiff was not disabled during the relevant time period is supported by substantial evidence in the record.  Accordingly, based on the following analysis, I recommend that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #7) ("Motion to Affirm") be granted and that Plaintiff's Motion to Reverse without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Doc. #6) ("Motion to Reverse or Remand") be denied.

### Discussion

#### I.    ALJ's Decision

    In a decision dated February 24, 2004, the administrative law judge ("ALJ"), Hugh S. Atkins, found that: the hearing decision (pertaining to a prior application) dated May 23, 1998, was res judicata as to the issue of Plaintiff's disability at any

---

    [2] Because the Court found one issue to be dispositive, it declined to address Plaintiff's remaining arguments.  See Report and Recommendation of 9/26/08 at 17.

time through the date of that decision;[3] that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability;[4] that Plaintiff's chronic pain syndrome/ fibromyalgia and obesity were severe impairments but her depression and anxiety were not; that Plaintiff's severe impairments did not meet or equal the clinical requirements of any listing contained in Appendix 1 to Subpart P of Social Security Regulations No. 4 on or before December 31, 1999, her date last insured; that the severity of symptoms and degree of incapacity Plaintiff asserted were not supported by the record and not deemed credible for the period on or before December 31, 1999; that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work;[5] that Plaintiff's past relevant work as a customer service representative, data entry worker, and cashier did not require the performance of work-related activities precluded by her RFC; that, therefore, she was able to perform her past relevant work; and that Plaintiff was not under a disability as defined by the Act at any time on or before December 31, 1999, and was, therefore, not

---

[3] For additional background information, refer to the Report and Recommendation of 9/26/08.

[4] ALJ Atkins held that "the hearing decision dated May 23, 1998, is res judicata that the claimant was not under a 'disability,' as defined in the Social Security Act[,] at any time through said date. Therefore, the remaining issue to be resolved is whether the claimant has been disabled subsequent to May 23, 1998, and in particular on or before December 31, 1999, her date last insured under Title II." (Record ("R.") at 33)  In fact, at the October 17, 2002, hearing before ALJ Atkins, Plaintiff had amended her alleged onset date to January 26, 1999, when she began treating at Butler Hospital.  (R. at 774)  Accordingly, the Court finds that the relevant period is January 26, 1999, through December 31, 1999.

[5] The ALJ noted that prior to her date last insured of December 31, 1999, Plaintiff did not suffer from any nonexertional limitations, including with respect to her alleged mental impairments.  (R. at 36 n.6)

3

entitled to a period of DIB.   (Record ("R.") at 38-39)

## II.  Plaintiff's Challenges to ALJ's Decision

Plaintiff raises the following challenges to the ALJ's decision: (1) the ALJ failed properly to evaluate the expert medical opinion of examining psychologist Dr. Ronald Paolino; (2) the ALJ failed to follow the prescribed technique for evaluation of mental impairments; (3) the ALJ failed to follow Social Security Ruling ("SSR") 00-4p; (4) the ALJ failed to evaluate Plaintiff's obesity pursuant to SSR 02-01p; and (5) the ALJ's decision is not supported by substantial evidence.  See Plaintiff's Memorandum in Support of Plaintiff's Motion to Reverse without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision ("Plaintiff's Mem.") at 6-15.  The Court addresses each of Plaintiff's arguments, albeit in different order.

### A.   Substantial Evidence

Plaintiff alleges that ALJ Atkins' decision, specifically his finding that Plaintiff's mental impairments were not severe and his RFC finding, is not supported by substantial evidence in the record.  See Plaintiff's Mem. at 8-9, 13-15.  Defendant argues that "substantial evidence supports the ALJ's finding that Plaintiff failed to show that she had any severe mental impairment during the period at issue.  Further, Plaintiff failed to show that she had any nonexertional RFC limitations relative to her mental impairments."  Defendant's Memorandum of Law in Support of Motion for an Order Affirming the Decision of the Commissioner ("Defendant's Mem.") at 24.  Rather, Defendant states, substantial evidence "reasonably shows that during the relevant period Plaintiff had no more than mild mental limitations that did not significantly limit her RFC for light work."  Id. (citing R. at 274, 278, 478, 485, 487, 489, 490-91, 625, 635, 637, 639-40).

The ALJ found that Plaintiff retained the RFC to perform a full range of light work. (R. at 36, 38) In reaching this determination, ALJ Atkins stated:

> In determining the claimant's residual functional capacity, the Administrative Law Judge has carefully considered the claimant's allegations in the record and her testimony at the previous proceedings that she has suffered, including during the period on or before December 31, 1999, her date last insured for Title II, from severe headaches, pain through out her body, depression and anxiety which left her unable to engage in sustained activity including inability to use her extremities for repetitive movements or perform prolonged sitting, standing or walking and difficulty concentrating and tolerating stress, as well as her described minimal daily activities (i.e., she claimed that she had to rest frequently). Although the Administrative Law Judge realizes that the claimant has experienced some degree of pain, other symptomatology and functional limitation, applying the standard set forth in 20 CFR [§] 404.1529, SSR's 96-3p and 96-7p[,] and <u>Avery v. Secretary of Health and Human Services</u>, 797 F.2d 19 (1st Cir. 1986), it is not of sufficient severity to persuade him that the claimant on or before December 31, 1999, her date last insured for Title II, was incapable of performing a full range of light work such that she was capable of lifting and carrying 10 pounds frequently and 20 pounds occasionally, able to use her upper and lower extremities for repetitive pushing/pulling and fine and gross manipulations[,] and sitting, standing and walking for at least 6 hours each in an 8 hour work day.

(R. at 35-36)(internal citations omitted).

As the Court observed in the Report and Recommendation of 9/26/08:

> Plaintiff's memorandum is problematic because she repeatedly fails to provide record citations for key portions of her argument. For example, she asserts: "[m]ost importantly, the ALJ does not mention that [Plaintiff] was in regular treatment for depression prior to her [date last insured]." Plaintiff's Mem. at 8. However, she does not identify who provided this treatment or where in the record evidence supporting the claim of "regular treatment" exists. Moreover, Defendant

5

disputes Plaintiff's claim.  _See_ Defendant's Memorandum of Law in Support of Motion for an Order Affirming the Decision of the Commissioner ("Defendant's Mem.") at 11.

Plaintiff further asserts that the ALJ's determination that Plaintiff's "mental impairment was non-severe is wholly inconsistent with four doctors: Social Security's Dr. Clifford, Social Security's Dr. Paolino, the Plaintiff's treating physician Dr. Grumbach[,] and the Plaintiff's psychologist, Sherri Fitts."  Plaintiff's Mem. at 11.  Yet, Plaintiff again fails to identify where in the record the allegedly inconsistent reports can be found.  _See_ _id._  The omission is only partially ameliorated in the case of Dr. Paolino by the fact that Plaintiff cited to his report earlier in the memorandum, _see_ _id._ at 6-8, but it is still an inconvenience to have to search back three pages to find the needed citation.   In the case of Drs. Clifford, Grumbach, and Fitts, however, the omission is totally unmitigated.  Plaintiff's memorandum is devoid of any citations to their reports, yet she refers to them repeatedly.  _See_ _id._ at 6-8, 14.

Plaintiff contends that Dr. Grumbach's opinion is largely consistent with that of Dr. Clifford, but again provides no citation for either opinion.  _See_ _id._ at 14.  In the case of Dr. Grumbach, the record contains multiple reports and records from him, _see_ (R. at 703-709, 715-20, 745), leaving it to the Court to surmise which report or record Plaintiff contends supports her position.  _See_ _id._  Plaintiff additionally refers to "the opinions of ... Dr. Braden[] and Dr. Reardon," _id._ at 14, without indicating where in the record the reports containing these opinions can be found.

Plaintiff complains that "the ALJ should have discussed and analyzed the conflict between the opinion of the non-examining physician and that of the numerous examining and treating physicians who opined that the plaintiff was more limited," _id._ at 14-15, but she does not identify these physicians by name or where their opinions can be found, _see_ _id._ at 15.  Finally, Plaintiff additionally complains that "the ALJ chose to ignore certain pieces of evidence entirely, namely evidence that was reviewed by the prior ALJ, Judge Kennedy, who issued an unfavorable decision in 1998."  However, Plaintiff again does not further identify the "evidence" which the ALJ allegedly ignored.

A plaintiff seeking judicial review of an ALJ's decision has an obligation to identify parts of the record that support her claims of error.  _See_ DRI LR Cv

7(d)(4).  The record in this case is more than 800 pages
in length, and it is an imposition on the Court for
Plaintiff's counsel to fail to provide relevant
citations.  Cf. Mercado-Alicea v. P.R. Tourism Co., 396
F.3d 46, 51 (1st Cir. 2005)("District courts are not
required to ferret through sloppy records in search of
evidence supporting a party's case."); Conto v. Concord
Hosp., Inc., 265 F.3d 79, 81 (1st Cir. 2001)(finding
plaintiff's fact-specific hostile work environment claim
waived for failure "to cite any record fact material to
this factual inquiry"); id. (stating "that appellants,
rather than the courts of appeals, ferret out and
articulate the record evidence considered material to
each legal theory advanced on appeal"); United States v.
Zannino, 895 F.2d 1, 17 (1st Cir. 1990)("It is not enough
merely to mention a possible argument in the most
skeletal way, leaving the court to do counsel's work,
create the ossature for the argument, and put flesh on
its bones.").

Report and Recommendation of 9/26/08 at 9-12 (alterations in
original)(footnote omitted).  For the reasons stated in the above
excerpt, the Court finds that Plaintiff has waived this argument.
See Conto v. Concord Hosp., Inc., 265 F.3d at 81 (finding
plaintiff's hostile work environment claim waived for failure to
cite to any facts in the record material to factual inquiry).

The Court has reviewed the entire record and finds that the
ALJ's decision is supported by substantial evidence and that
Plaintiff's challenges in this regard should be rejected.
Accordingly, I do not recommend remand on this claim of error.

**B.    Evaluation of opinion of examining psychologist**

Plaintiff argues that the ALJ failed to evaluate properly
the expert medical opinion of Ronald Paolino, Ph.D.  See
Plaintiff's Mem. at 6.  Specifically, Plaintiff asserts that ALJ
Atkins violated the Remand Order[6] as well as the regulations

_____

[6] In the Report and Recommendation of 9/26/08, this Magistrate
Judge rejected Plaintiff's argument that remand was warranted based on
the ALJ's alleged failure to comply with the Appeals Council's remand
order.  See Report and Recommendation of 9/26/08 at 12-13.  That

governing evaluation of medical evidence.  See id. at 6-9.

Regarding Plaintiff's alleged mental impairments, the ALJ
stated:

> Although the claimant has alleged that she has suffered
> from depression and anxiety and she has received
> diagnoses of affective and anxiety related disorders, the
> record fails to establish that those impairments
> significantly affected her ability to engage in basic
> work related activities on or before December 31, 1999,
> her date last insured; and those impairments are found to
> have been nonsevere on or before said date.  In this
> regard ... the claimant's mental impairments were found
> to have been nonsevere in the final hearing decision
> dated May 23, 1998, which is res judicata as to the issue
> of disability through said date.  In addition, review of
> the medical evidence covering the period subsequent
> thereto through December 31, 1999, her date last insured
> under Title II[,] fails to demonstrate any significant
> change in the claimant's mental functioning during said
> period.    In   connection   with   her   treatment   for
> fibromyalgia she underwent a psychological evaluation by
> Ronald Thebarge, Ph.D., in September 1998.  At that time
> she was complain[ing] of pain, depression, anxiety and
> binge eating, and received a diagnosis of a pain disorder
> with the need to rule out an eating disorder and a
> generalized anxiety disorder.   Nevertheless, she was
> assessed a GAF of 60,[7] which is consistent with only
> mild to moderate impairment of social and occupational
> functioning.  Subsequent thereto, the claimant was seen

---

portion of the Report and Recommendation of 9/26/08 was not addressed
by Judge Smith's Memorandum and Decision of 10/14/08.  Accordingly,
that discussion need not be repeated here.

[7] The Global Assessment of Functioning ("GAF") "is a subjective
determination based on a scale of 100 to 1 of 'the clinician's
judgment of the individual's overall level of functioning.'"  Langley
v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004)(quoting
Diagnostic and Statistical Manual of Mental Disorders (Text Revision
4th ed. 2000) ("DSM-IV-TR") at 32).  The GAF "[c]onsider[s]
psychological, social, and occupational functioning on a hypothetical
continuum of mental health-illness."  DSM-IV-TR at 34.  A GAF between
51 and 60 evidences "**[m]oderate symptoms** (e.g., flat affect and
circumstantial speech, occasional panic attacks) **OR moderate
difficulty in social, occupational, or school functioning** (e.g., few
friends, conflicts with peers or co-workers)."  Id.

at Butler Hospital on January 26, 1999, June 10, 1999, and September 13, 1999, October 4, 13, and 27, 1999[,] for complaints of mood difficulties/depression and pain for which she was prescribed Prozac. Nevertheless, she was assessed GAF's of 68[8] in January 1999 and June 1999 and 67 in September 1999. Those assessments are consistent with mild impairment of social and occupational functioning, and a nonsevere impairment. In addition, nonexamining state agency physician Dr. Killenberg in an assessment dated October 3, 2001, maintained that the claimant's mental impairments were nonsevere during the period May 1998 through December 1999. In view of the fact that those assessments are consistent with the aforementioned record as a whole, they are given significant probative weight. Although Ronald Paolino, Ph.D., who conducted a psychological evaluation of the claimant in May 2001[9] assessed the claimant a GAF of 51[10] (i.e., consistent with moderate to marked impairment of social and occupational functioning), and the record contains assessments of Dr. Braden (i.e., dated October 15, 2002), a psychiatrist,

---

[8] A GAF between 61 and 70 is indicative of "**[s]ome mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the household) **but generally functioning pretty well, has some meaningful interpersonal relationships**." DSM-IV-TR at 34.

[9] Regarding Plaintiff's daily activities, Dr. Paolino observed, based on Plaintiff's report, that "[s]he stays in the house most of the time with her dog." (R. at 580) He indicated that she was close to her aunt, children, and husband, had many friends, and had no problems with authority figures. (R. at 581) Dr. Paolino found that Plaintiff's "concentration during the interview was unimpaired," (id.), but noted her statement that "she does have difficulty completing everyday household tasks due to her fibromyalgia and her lack of motivation and lack of confidence," (id.).

Dr. Paolino diagnosed Plaintiff with post-traumatic stress disorder, bipolar disorder, and panic disorder with agoraphobia. (Id.) He observed that "[t]his patient is a good candidate for therapy and treatment, and her prognosis is good." (R. at 582) Somewhat inconsistently, given his statements regarding Plaintiff's relationships and social functioning, Dr. Paolino opined that Plaintiff had "a serious impairment in social and occupational functioning," (id.), and that "[s]he is not able to do her job," (id.). There is no indication in Dr. Paolino's assessment of May 15, 2001, that it was intended to be retrospective.

[10] See n.7.

who began treating the claimant at Butler Hospital in January 2001, of her social worker Mr. Johnson dated October 15, 2002, and November 18, 2002, of Daniel Lopreto, Ph.D., (i.e., a nonexamining reviewer) in December 2001, and of her primary care physician Dr. Grumbach (i.e., he began treating the claimant in June 2002) dated October 21, 2002, and November 25, 2002, that the claimant was unable to engage in sustained competitive employment as she had moderately severe impairment of her ability to concentrate and persist at tasks or tolerate ordinary work pressure, with Drs. Grumbach and Mr. Johnson opining in the latter assessments that this level of severity has been present since January 1999, those assessments are inconsistent with the aforementioned record as a whole and were made by sources who treated, examined or evaluated the claimant after December 31, 1999, and are given less probative weight for the period on or before December 31, 1999, her date last insured for Title II.

(R. at 34-35)(internal citations and footnotes omitted).

The regulation pertaining to evaluation of opinion evidence directs an ALJ to evaluate every medical opinion submitted and to consider the following factors in determining the weight to be given to the opinion: (1) the existence of an examining relationship; (2) the existence of a treating relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) other factors.[11]  See 20 C.F.R. § 404.1527(d) (2008).  In addition, § 404.1527(e) provides in relevant part that:

Opinions on some issues, such as the examples that follow, are not medical opinions ... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of

---

[11] The "other factors" include "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record ...."  20 C.F.R. § 404.1527(d)(6).

> a case; i.e., that would direct the determination or
> decision of disability.
>> (1) Opinions that you are disabled.  We are
>> responsible for making the determination or
>> decision about whether you meet the statutory
>> definition of disability.  In so doing, we review
>> all of the medical findings and other evidence that
>> support a medical source's statement that you are
>> disabled.  A statement by a medical source that you
>> are "disabled" or "unable to work" does not mean
>> that we will determine that you are disabled.

20 C.F.R. § 404.1527(e).

It is clear that the ALJ considered the required factors.
He noted that Dr. Paolino had performed a one-time, consultative
evaluation of Plaintiff, (R. at 35), thereby indicating his
awareness that Dr. Paolino was an examining, not treating,
source, see 20 C.F.R. § 404.1527(d)(1), (2).  The ALJ was also
aware of Dr. Paolino's specialty, stating that Dr. Paolino had
"conducted a psychological evaluation of the claimant ...."  (R.
at 35); see also 20 C.F.R. § 404.1527(d)(5).  Significantly, the
ALJ found Dr. Paolino's assessment, along with those of other
sources who "treated, examined or evaluated the claimant after
December 31, 1999, her date last insured for Title II ...," (R.
at 35), "inconsistent with the aforementioned record as a whole
...," (id.); see also 20 C.F.R. § 404.1527(d)(4).  Implicit in
the former statement, although not directly expressed, is a
finding that the GAF of 51 assessed by Dr. Paolino was not
supported by the record for the relevant period.[12]  See 20 C.F.R.
§ 404.1527(d)(3); cf. Irlanda Ortiz v. Sec'y of Health & Human
Servs., 955 F.2d 765, 769 (1st Cir. 1991)("It is the
responsibility of the [Commissioner] to determine issues of
credibility and to draw inferences from the record evidence.").

---

[12] Even if it were supported by the record, a GAF of 51 is
indicative only of moderate symptoms.  See DSM-IV-TR at 34; see also
n.7.

The Court finds the ALJ's determination regarding consistency and implicit determination regarding supportability to be supported by substantial evidence in the record.

As the ALJ noted in his lengthy summary of the evidence pertaining to Plaintiff's mental impairments, Plaintiff began treating at Butler Hospital on January 26, 1999, with Sarah Hayes Pardee, LICSW, for complaints of mood difficulties, depression, and pain for which she was prescribed Prozac.[13]  (R. at 34, 473-79, 774)  Plaintiff, however, only attended the initial evaluation and did not follow up on Ms. Pardee's recommendation for therapy.[14]  (R. at 480)  She was discharged on June 10, 1999. (R. at 480-81)  Plaintiff returned to Butler on September 13, 1999, and was seen by Diane Wilkin, Ph.D.  (R. at 482-85) Thereafter, Plaintiff attended sessions with Dr. Wilkin on September 27, October 4, October 13, and October 27, 1999.  (R. at 487-91)

Plaintiff was assessed GAF's of 68[15] in January of 1999 and

---

[13] Prior to that, Plaintiff had treated with Sherri Fitts, Ph.D., from 1996-1998.  (R. at 257-59, 273-74, 476)  Plaintiff testified that she stopped seeing Dr. Fitts because Dr. Fitts stopped accepting Blue Cross, Plaintiff's health insurance, and Plaintiff could not afford to continue. (R. at 788)  Plaintiff's primary care physician, Greigstone Yearwood, M.D., had noted on August 10, 1999, that she complained of depression and prescribed Prozac, (R. at 552-554).  He subsequently changed her medication to Wellbutrin due to Plaintiff's complaint that Prozac made her sleepy.  (R. at 554)  However, Plaintiff did not like Wellbutrin, and Dr. Yearwood prescribed Prozac again in December, 1999.  (R. at 556)

[14] Plaintiff testified that she and Ms. Pardee "didn't get along very well."  (R. at 781)

[15] A GAF between 61 and 70 is indicative of "**[s]ome mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the household) **but generally functioning pretty well, has some meaningful interpersonal relationships.**"  DSM IV - TR at 34.

67 in September, 1999.[16]   (R. at 34, 478, 480, 485)   ALJ Atkins correctly noted that the GAF's assessed are consistent with mild impairment of social and occupational functioning.   (R. at 34); see also Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34.   The GAF's are borne out by the notes from Butler Hospital, which reflect that Plaintiff was feeling "better" on Prozac, (R. at 489, 491), that Prozac was "working well," (R. at 490), and that she was engaging in social activities with family and friends, (id.).

The ALJ also cited Dr. Killenberg's October 3, 2001, assessment, in which she maintained that Plaintiff's mental impairments were not severe during the period May 1998 through December 1999.   (R. at 34, 625, 639)   On the PRTF, Dr. Killenberg indicated that Plaintiff was mildly restricted in her activities of daily living and mildly limited in her ability to maintain concentration, persistence, and pace.   (R. at 635)   The doctor found no difficulty in Plaintiff's ability to maintain social functioning and no episodes of decompensation.   (Id.)   Dr. Killenberg included a detailed explanation of her findings, noting that the "[r]ecord during period in question supports presence of a pain disorder with associated psychological features, and dysthymia."   (R. at 640)(internal citations omitted).   She observed that Plaintiff's activities of daily living were slowed by pain, not psychological factors, (id.), and found "no abnormalities in attention, concentration or memory," (id.).   She again indicated that pain, not psychological issues, "will cause disruption in concentration."   (Id.)   According to Dr. Killenberg, the record reflected that Plaintiff had good relationships with her family and friends and Plaintiff was

_____

[16] Although ALJ Atkins states that Plaintiff "was assessed GAF's of 68 in January 1999 and June 1999 ...," (R. at 34), the June 1999 form is actually the discharge form reflecting the GAF of 68 which had been assessed in January 1999, (R. at 480).

described as "pleasant, cooperative, and well-groomed."  (R. at 640)  Dr. Killenberg stated that Plaintiff had no psychiatric hospitalizations during the period in question and that, based on the foregoing, Plaintiff's mental impairment was not severe. (Id.)

Clearly Dr. Paolino's assessment conflicts with other evidence in the record.  The resolution of conflicts in the evidence is the ALJ's responsibility, not the Court's.  See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d at 769 ("[T]he resolution of conflicts in the evidence is for the [Commissioner], not the courts."); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987)("Conflicts in the evidence are, assuredly, for the [Commissioner]–rather than the courts–to resolve."); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts.")(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420 (1971)).  Accordingly, the Court finds that the ALJ's decision to give that opinion little weight was reasonable.  The Court "must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d at 769 (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d at 222)(second alteration in original).  In addition, the ALJ justifiably relied on Dr. Killenberg's assessment, given the level of detailed analysis she included. See Berrios-Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991)(allowing nonexamining doctor's report to constitute substantial evidence because it "contain[ed] more in the way of subsidiary medical findings to support his conclusions

14

concerning residual functional capacity than is customarily found in the reports of consulting, non-examining physicians" whose "reports often contain little more than brief conclusory statements or the mere checking of boxes denoting levels of residual functional capacity, and accordingly are entitled to relatively little weight").

Finally, the Court notes that the ALJ was not required to accept Dr. Paolino's opinion that Plaintiff "is not able to do her job." (R. at 582) "[T]he determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); see also Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991) (noting that ALJ is not required to accept opinion on ultimate issue of disability even from treating source); 20 C.F.R. § 404.1527(e) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); SSR 96-5p, 1996 WL 374183, at *3 (S.S.A.)("[T]he adjudicator is precluded from giving any special significance to the source[,] e.g., giving a treating source's opinion controlling weight, when weighing these opinions on issues reserved to the Commissioner.").

Based on the foregoing, the Court concludes that the ALJ properly determined to give little weight to the opinion of Dr. Paolino. I therefore do not recommend remand based on this claim of error.

C.    **Utilization of special technique for evaluation of mental impairments**

Plaintiff argues that ALJ Atkins "failed to follow the prescribed technique for the evaluation of mental impairments ...," Plaintiff's Mem. at 9, thereby "violat[ing] the regulation

and the Appeals Council remand order[17] by failing to make the required findings contemplated by the special technique ...," <u>id.</u> at 11.  Defendant counters that ALJ Atkins "discussed the fact that Dr. Fitts assessed a mild restriction in [Plaintiff's] activities of daily living, a mild limitation in social functioning, no limitation in concentration, persistence or pace[,] and no episodes of decompensation ...," Defendant's Mem. at 14 (citing R. at 34 n.3), found that "the record failed to show any significant change in Plaintiff's mental functioning during the relevant period," <u>id.</u>, and "obviously adopted Dr. Fitts' assessment of Plaintiff's functioning in each of the four areas set forth in 20 C.F.R. § 404.1520a for the period at issue ...," <u>id.</u>  Although Defendant concedes that "the ALJ might arguably have documented his findings on this issue in a clearer fashion ...," <u>id.</u>, the Court finds such error to be harmless in the limited circumstances of this case.

Section 404.1520a requires the use of a special technique in evaluating mental impairments.  <u>See</u> 20 C.F.R. § 404.1520a(a) (2008).  In order to determine whether a mental impairment is severe, the ALJ is directed to evaluate a claimant's degree of limitation in four areas of mental functioning that the Social Security Administration ("SSA") has deemed essential to work: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation or deterioration in a work-like setting.  <u>See</u> 20 C.F.R. § 404.1520a(c)(3); <u>see also</u> <u>Figueroa-Rodriguez v. Sec'y of Health & Human Servs.</u>, 845 F.2d 370, 372 (1st Cir. 1988) (describing procedure); <u>Guyton v. Apfel</u>, 20 F. Supp.2d 156, 165 (D. Mass. 1998)(same).  In his written decision the ALJ should:

incorporate the pertinent findings and conclusions based

---

[17] <u>See</u> n.6.

16

on the technique.  The decision must show the significant
history, including examination and laboratory findings,
and the functional limitations that were considered in
reaching a conclusion about the severity of the mental
impairment(s).  The decision must include a specific
finding as to the degree of limitation in each of the
functional areas described in paragraph (c) of this
section.

20 C.F.R. § 404.1520a(e)(2); see also Guyton, 20 F.Supp.2d at
165.

In his decision, ALJ Atkins stated:

Dr. Fitts opined in an assessment dated February 18,
1998, that the claimant had only mild restriction of her
daily activities and social functioning, no impairment of
concentration[,] and no episodes of deterioration or
decompensation in work or work-like settings.

(R. at 34 n.3)(internal citation omitted); see also (R. at 274).
As noted previously, Defendant argues that "the ALJ obviously
adopted Dr. Fitts' assessment of Plaintiff's functioning in each
of the four areas set forth in 20 C.F.R. § 404.1520a for the
period at issue, as this assessment was well-supported by the
record."  Defendant's Mem. at 14.

In Silva v. Barnhart, C.A. No. 05-134 S, slip op. at 7-8
(D.R.I. Sept. 14, 2006), U.S. District Judge William E. Smith
rejected similar reliance by an ALJ on a medical source's PRTF
assessment.  Judge Smith found that the PRTF was "both internally
inconsistent and contradicted by the record ...."  Id. at 11.[18]
Accordingly, Judge Smith found that the ALJ's legal error was not
harmless and that his conclusion that the claimant's mental

---

[18] Specifically, Judge Smith found that the PRTF did not
distinguish between limitations stemming from the claimant's mental
impairment and those resulting from his substance abuse, that the PRTF
was internally inconsistent, and that the PRTF did not constitute
substantial evidence because it consisted of checked boxes rather than
written comments and medical conclusions.  See Silva v. Barnhart, C.A.
No. 05-134 S, slip op. at 8 (D.R.I. Sept. 14, 2006).

impairment was not severe was unsupported by substantial evidence.  See id. at 10-11.

Based on a broad reading of Judge Smith's holding in Silva, this Magistrate Judge initially recommended remand of the instant matter for compliance with 20 C.F.R. § 404.1520a(a).  See Report and Recommendation of 9/26/08 at 16-17.  However, the Court also stated that "[i]n the absence of Silva, this Magistrate Judge would accept Defendant's argument that the ALJ 'obviously adopted Dr. Fitts' assessment of Plaintiff's functioning in each of the four areas set forth in 20 C.F.R. § 404.1520a for the period at issue ...,' and would find that the ALJ's failure to utilize the special technique in this case was harmless error."  Id. at 17 n.12 (second alteration in original)(internal citation omitted).

As noted previously, Judge Smith declined to accept the Report and Recommendation of 9/26/08 and "refer[red] this case back to the Magistrate Judge for review consistent with this decision and if necessary further recommendations as to disposition with respect to the Plaintiff's remaining arguments." Memorandum and Decision of 10/14/08 at 4.  Noting that the result in Silva was "highly fact dependent," id. at 3, Judge Smith stated that:

> In this case, the record establishes that the ALJ relied
> on Dr. Fitts' assessment.  It appears that Dr. Fitts'
> assessment addresses each of the four areas required
> under 20 C.F.R. § 404.1520a.  In returning this case to
> the Magistrate Judge, the Court would ask that he review
> the assessment paying particular attention for the
> absence of the factors discussed in Silva.  If the
> Magistrate Judge is confident that none of the factors
> present in Silva appear in the record of this case then
> he should feel free to recommend a finding of harmless
> error.

Id. at 4.

Dr. Fitts' PRTF does not suffer from the deficiencies Judge Smith found in Silva.  There is no evidence of substance abuse in

the instant matter, and it is clear from Dr. Fitts' forms that she focused on limitations resulting from Plaintiff's mental impairments.  (R. at 257-59, 273-74)  There is no internal inconsistency present in Dr. Fitts' PRTF.  While the PRTF does consist of check-off boxes, which by themselves cannot constitute substantial evidence, see Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d at 431, Dr. Fitts' assessment is not contradicted by the record.  Indeed, the PRTF is supported by other, substantial evidence in the record for the relevant period, as is clear from the ALJ's summary of that evidence.

While Dr. Fitts' PRTF, dated February 18, 1998, (R. at 274), predates Plaintiff's alleged onset date of January 26, 1999, (R. at 774), Dr. Fitts' PRTF is consistent with Dr. Killenberg's findings for the period May, 1998, through December, 1999, (R. at 625), in that neither source found Plaintiff to be more than mildly limited in any of the four areas, (R. at 274, 635).  The ALJ noted that Dr. Killenberg had concluded that Plaintiff's mental impairments were nonsevere during that period.  (R. at 34) Moreover, the GAF's assessed between January and September, 1999, 67 and 68, are consistent with only mild symptoms or some difficulty in social, occupational, or school functioning.  See DSM-IV-TR at 34.  Indeed, the DSM-IV-TR indicates that with a GAF of 67 or 68 a person would be "generally functioning pretty well ...."  Id.

Based on the foregoing, the Court concludes that the ALJ would not, based on the record before him, find Plaintiff's mental impairments to be severe prior to her date last insured. Therefore, remand for the purpose of having the ALJ list his findings in the four required areas would amount to no more than an "empty exercise."  Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 73 (1st Cir. 1999)("[W]hen a reviewing court discovers a serious infirmity in agency decisionmaking, the ordinary course

19

is to remand.  But such a course is not essential if remand will amount to no more than an empty exercise.")(internal citations omitted); see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); Seymour v. Barnhart, No. 02-197-B-W, 2003 WL 22466174, at *3 (D. Me. Oct. 31, 2003)("We have often held that [a]n arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably ha[s] no practical effect on the outcome of the case.")(quoting Bryant ex rel. Bryant v. Apfel, 141 F.3d 1249, 1252 (8th Cir. 1998))(alterations in original); Lord v. Apfel,114 F.Supp.2d 3, 13 (D.N.H. 2000)("[W]e see no reason to return this case for the purely formulaic purpose of having the ALJ write out what seems plain on a review of the record.")(quoting Shaw v. Sec'y of Health & Human Servs., 1994 WL 251000, at *5).

Dr. Fitts' PRTF does not suffer from the same deficiencies noted by Judge Smith in Silva, and the PRTF is consistent with other, substantial evidence in the record.  Thus, the ALJ justifiably relied on Dr. Fitts' assessment.  Accordingly, I find that the ALJ's failure to document application of the special technique for evaluation of mental impairments is harmless error and that remand is not warranted for compliance with 20 C.F.R. § 404.1520a.  I therefore do not recommend remand on this claim of error.

### D.   Compliance with SSR 00-4p

Plaintiff alleges that "the ALJ did not inquire about whether there was an inconsistency in the vocational expert's testimony despite asking where the vocational expert found the numbers for assemblers, laborers and inspectors."  Plaintiff's

Mem. at 12.  In Plaintiff's view, "[t]his is clear error."  <u>Id.</u>

According to SSR 00-4p:

> When there is an apparent unresolved conflict between VE
> or VS[19] evidence and the [<u>Dictionary of Occupational
> Titles</u> ("DOT")], the adjudicator must elicit a reasonable
> explanation for the conflict before relying on the VE or
> VS evidence to support a determination or decision about
> whether the claimant is disabled.  At the hearings level,
> as part of the adjudicator's duty to fully develop the
> record, the adjudicator will inquire, on the record, as
> to whether or not there is such consistency.

SSR 00-4p, <u>available at</u> 2000 WL 1898704, at *2 (S.S.A.).

The Ruling subsequently states:

> When a VE or VS provides evidence about the requirements
> of a job or occupation, the adjudicator has an
> affirmative responsibility to ask about any possible
> conflict between that VE or VS evidence and information
> provided in the DOT.   In these situations, the
> adjudicator will:
>> Ask the VE or VS if the evidence he or she has
>> provided conflicts with information provided in the
>> DOT; and
>> If the VE's or VS's evidence appears to conflict
>> with the DOT, the adjudicator will obtain a
>> reasonable explanation for the apparent conflict.
>
> ****
>
> When vocational evidence provided by a VE or VS is not
> consistent with information in the DOT, the adjudicator
> must resolve this conflict before relying on the VE or VS
> evidence to support a determination or decision that the
> individual is or is not disabled.  The adjudicator will
> explain in the determination or decision how he or she
> resolved the conflict.

<u>Id.</u> at *4.

Some courts have interpreted these provisions as requiring

---

[19] A VS is a vocational specialist "who provide[s] evidence to
disability determination services (DDS) adjudicators ...."  SSR 00-4p,
2000 WL 1898704, at *1 (S.S.A.).

an ALJ to inquire only when a conflict between VE testimony and
the DOT has been identified, while others have concluded that the
ALJ is required to ask the VE whether any possible conflict
exists.  <u>Compare</u> <u>Donahue v. Barnhart</u>, 279 F.3d 441, 446 (7th Cir.
2002)(stating that SSR 00-4p "requires the ALJ to '[e]xplain [in
the] determination or decision how any conflict [with the
<u>Dictionary</u>] that *has been identified* was resolved.'")(quoting SSR
00-4p)(alterations in original), <u>with</u> <u>Burns v. Barnhart</u>, 312 F.3d
113, 127 (3rd Cir. 2002)(stating that SSR 00-4p "requires that
the ALJ ask the vocational expert whether any possible conflict
exists between the vocational expert's testimony and the DOT, and
that, if the testimony does appear to conflict with the DOT, to
elicit a reasonable explanation for the apparent conflict.")
(internal quotation marks omitted).  The First Circuit has not
ruled definitively that an ALJ must always ask the VE about any
possible conflicts or that a reviewing court must remand if an
ALJ fails to do so.  <u>See, e.g.</u>, <u>Freeman v. Barnhart</u>, 274 F.3d
606, 609 (1st Cir. 2001)(remanding, in part, for compliance "with
a new Social Security Ruling clarifying the ALJ's duty to resolve
any conflicts between the vocational expert's testimony and the
definitions in the <u>Dictionary of Occupational Titles</u>," at the
Commissioner's request, without discussing the circumstances
under which such remand is required).

This Court finds the reasoning of the Court of Appeals for
the Seventh Circuit persuasive.  The Seventh Circuit stated that:

> The ruling requires an explanation only if the
> discrepancy was "identified"—that is, if the claimant (or
> the ALJ on his behalf) noticed the conflict and asked for
> substantiation.  Raising a discrepancy only after the
> hearing, as [the claimant's] lawyer did, is too late.  An
> ALJ is not obliged to reopen the record.  On the record
> as it stands—that is, with no questions asked that reveal
> any shortcomings in the vocational expert's data or
> reasoning—the ALJ was entitled to reach the conclusion
> she did.

22

Donahue v. Barnhart, 279 F.3d at 446-47; see also Hodgson v. Barnhart, No. 03-185-B-W, 2004 WL 1529264, at *2 (D. Me. June 24, 2004)("[T]he mere failure to ask such a question cannot by itself require remand; such an exercise would be an empty one if the vocational expert's testimony were in fact consistent with the DOT.  Only an inconsistency between the testimony and the DOT that affects a plaintiff's claim could reasonably provide the basis for overturning the [C]ommissioner's decision ...."); Thompson v. Barnhart, 281 F.Supp.2d 770, 782-83 (E.D. Pa. 2003) (dismissing plaintiff's argument that ALJ failed to ask VE whether his testimony conflicted with DOT because "[t]his argument erroneously assumes that an ALJ must make a mechanical inquiry on this point any time a VE testifies.  Such is not the case" and holding that "the ALJ was under no duty to make such an inquiry"); Novak v. Barnhart, 180 F.Supp.2d 990, 1002 (E.D. Wis. 2001)(rejecting plaintiff's argument that ALJ was obligated to resolve conflict between VE testimony and DOT in part "because it is not clear that a conflict exists.  None was called to the ALJ's attention at the hearing ...").

In the instant case, no conflict was apparent.  As Defendant notes, "Plaintiff never raised this issue at the hearing, nor does she now contend that any conflict actually exists between the vocational expert's description of the various jobs discussed and the DOT's description of those jobs, especially with respect to Plaintiff's past relevant work."  Defendant's Mem. at 21. Thus, even assuming that the ALJ's failure to ask the VE about possible conflicts between his testimony and the DOT was error, the Court finds such error to be harmless.  See Doucette v. Barnhart, No. 04-89-P-S, 2004 WL 2862174, at *5 (D. Me. Dec. 13, 2004)("In any event, the failure to ask such a question is harmless if there is in fact no conflict that could affect the

outcome of the plaintiff's claim.").

Moreover, the jobs to which Plaintiff refers, "assemblers, laborers and inspectors," Plaintiff's Mem. at 12,  pertain to other jobs which Plaintiff may have been capable of performing, (R. at 820), a Step Five inquiry, see 20 C.F.R. § 404.1520(a)(4)(v) ("At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work."); see also id. § 404.1520(g)(1) ("If we find that you cannot do your past relevant work because you have a severe impairment(s) (or you do not have any past relevant work), we will consider the same residual functional capacity assessment we made under paragraph (e) of this section, together with your vocational factors (your age, education, and work experience) to determine if you can make an adjustment to other work.").  This case was decided at Step Four.  (R. at 38)("The claimant's past relevant work as a customer service representative, a data entry worker and as a cashier did not require the performance of work-related activities precluded by her residual functional capacity.")(internal citation omitted). Therefore, the jobs about which the VE testified, and for which Plaintiff seeks remand to determine whether his testimony conflicted with the DOT, were ultimately not relevant to the ALJ's conclusion that Plaintiff was capable of performing her past relevant work.  Cf. SSR 00-4p, 2000 WL 1898704, at *4 (noting that ALJ must resolve conflict between VE/ VS evidence and DOT "before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled").

Because remanding this matter for technical compliance with SSR 00-4p would have no practical effect on the outcome of the case, remand is unnecessary.  See Doucette v. Barnhart, 2004 WL

24

2862174, at *5 (noting that failure to ask question regarding conflict is harmless "if there is in fact no conflict that could affect the outcome of the plaintiff's claim"); see also Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 73 (1st Cir. 1999) (noting that remand is not essential "if remand will amount to no more than an empty exercise")(internal citations omitted); Fisher v. Bowen, 869 F.2d at 1057 (noting that remand is not required "unless there is reason to believe that the remand might lead to a different result"). Accordingly, I do not recommend remand on this issue.

### E.   Evaluation of Plaintiff's Obesity

Plaintiff argues that "the ALJ failed to assess the limitations resulting from her morbid obesity and the effect of these limitations on her residual functional capacity," Plaintiff's Mem. at 13, in violation of SSR 02-1p concerning the evaluation of obesity, see id. Defendant counters that the ALJ adequately considered Plaintiff's obesity. See Defendant's Mem. at 23.

According to SSR 02-1p, the SSA considers obesity in determining whether: (1) the individual has a medically determinable impairment; (2) the individual's impairment is severe; (3) the individual's impairment meets or equals the requirements of a listed impairment; and (4) the individual's impairment, or combination of impairments, prevents her from doing past relevant work and other work that exists in significant numbers in the national economy. See SSR 02-1p, 2000 WL 628049, at *3 (S.S.A.). It is clear that ALJ Atkins considered Plaintiff's obesity, as he found it to be a severe impairment although one which did not meet or equal a listed impairment, (R. at 38). Further, the ALJ stated:

> [W]hile the record reflects that the claimant has
> suffered from obesity, (i.e., she has reported heights of

66.5 to 68 inches and weights in the 270 pound range in 1997 and 1999), there is no documentation in the record that it has imposed any further functional limitations than those set forth in the aforementioned assessment of the nonexamining state agency physician for the period May 1999 through December 31, 1999.[20]

(R. at 37)(footnote omitted).  It is clear from the foregoing that the ALJ complied with the requirement that he "explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations."  SSR 02-1p, 2002 WL 628049, at *7.

Plaintiff did not testify to any limitations specifically attributable to her obesity at the October 17, 2002, hearing,[21] (R. at 775-803), nor does she now identify any limitations resulting from her obesity which she alleges should have been considered, see Plaintiff's Mem. at 12-13.  Indeed, obesity was not mentioned as a basis of Plaintiff's alleged disability in counsel's opening statement at the first hearing.  (R. at 773-75)  In her opening statement at the second hearing, Plaintiff's counsel observed regarding Plaintiff's obesity that "it's just an

---

[20] The "aforementioned assessment of the nonexamining state agency physician," (R. at 37), to which the ALJ refers is that of Stephen R. Fish, M.D.  In terms of exertional limitations, Dr. Fish found that Plaintiff was capable of lifting 20 pounds occasionally and 10 pounds frequently; standing, walking, and sitting for 6 hours in an 8 hour workday; and pushing and/or pulling on an unlimited basis.  (R. at 617)  He indicated that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, or crawl.  (R. at 618)  No manipulative, visual, communicative, or environmental limitations were established.  (R. at 618-20)  Regarding this assessment, the ALJ stated that "[i]n view of the fact that said assessment is consistent with the aforementioned record as a whole and is not contradicted by a competent well supported assessment from a treating or examining source, it would be entitled to significant probative weight with respect to the period on or before December 31, 1999, her date last insured for Title II.  (R. at 36)(internal citations omitted).

[21] Plaintiff did not appear for the November 16, 2004, hearing. (R. at 808, 810-11)

additional stressor, if you will, in her ability to function. Not only does she have the fibromyalgia, not only does she have the depression, but also morbid obesity." (R. at 813)

Because Plaintiff has failed to support her argument with specific references to limitations resulting from Plaintiff's obesity, the Court finds that her argument that the ALJ failed to adequately consider such limitations should be rejected. See Discussion section II.A. supra at 5-7 (quoting Report and Recommendation of 9/26/08 at 11-12); see also Mercado-Alicea v. P.R. Tourism Co., 396 F.3d at 51; Conto v. Concord Hosp., Inc., 265 F.3d at 81; United States v. Zannino, 895 F.2d at 17. I so recommend.

### F. Summary

The Court finds that the ALJ's decision is supported by substantial evidence in the record. With regard to the ALJ's RFC determination, Plaintiff's arguments that the ALJ failed to include unidentified findings from treating and examining physicians, unidentified nonexertional limitations, and unidentified prior evidence are rejected as waived. The Court also finds that ALJ Atkins properly evaluated Dr. Paolino's opinion and Plaintiff's obesity in compliance with the appropriate regulations and rulings. Finally, the Court finds that any legal error in evaluating Plaintiff's mental impairment pursuant to the special technique and in questioning the VE is harmless. Accordingly, I recommend that the Commissioner's decision be affirmed and that Plaintiff's request for remand be denied.

## III. Conclusion

The ALJ's determination that Plaintiff was not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record, and any legal error is harmless. Accordingly, I recommend that Defendant's Motion to

Affirm be granted and that Plaintiff's Motion to Reverse or Remand be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1ˢᵗ Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1ˢᵗ Cir. 1980).

<u>/s/ David L. Martin</u>
DAVID L. MARTIN
United States Magistrate Judge
January 12, 2009